**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 17, 2023.**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LONNIE HALL, | § | CASE NO. 22-60372-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 13 |

**ORDER AND OPINION ON OBJECTIONS TO DEBTOR'S HOMESTEAD EXEMPTION CLAIM**

I. **INTRODUCTION**

Before this Court are two objections to the Texas homestead exemption the Debtor claimed on two tracts of land in Limestone County, Texas ("**Limestone Tracts**"). JH Contracting, LLC ("**JH**"), an abstracted judgment creditor, and Ray Hendren, the chapter 13 trustee ("**Trustee**"), both assert that the Limestone Tracts do not qualify for the homestead exemption available under Article XVI, Sections 50 and 51 of the Texas Constitution and Texas Prop. Code §§ 41.001-.002.

1

Based on the evidence admitted and the arguments made, the Court will sustain the objections to the Debtor's claimed homestead exemption.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(b). Venue is proper under 28 U.S.C. § 1408. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This opinion serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

## III. FACTUAL BACKGROUND

On April 9, 2002, the Debtor and his brother, Michael Hall, each acquired, through inheritance, an undivided one-half interest in the Limestone Tracts, which consist of two tracts of land, one 14.79 acres and the other 22.12 acres.[1] To date, the Debtor has taken no concrete action to partition the Limestone Tracts or divide his interest from his brother's interest, which the Debtor testified must happen before he builds a home on the Limestone Tracts. Moreover, he admitted that he has never successfully claimed homestead status over the Limestone Tracts for real property ad valorem tax purposes[2] or filed a homestead affidavit in the Limestone County Public Records.

The Debtor uses the Limestone Tracts to store equipment, vehicles, and several horses. There are only two relevant improvements on the land: an old, dilapidated, and uninhabitable house, and a much smaller portable building (described as a single 15' x 15' room), in which the

---

[1] The parties presented no evidence about whether the two tracts are contiguous.
[2] The Debtor testified that he had unsuccessfully tried to claim a homestead exemption, but Limestone County officials refused to allow the claim. The Debtor never explained why he didn't pursue this claim further and never presented any documentary or other evidence that Limestone County designated the tracts as the Debtor's homestead for real property ad valorem tax purposes.

2

Debtor sleeps when he spends the night on the land. The portable building has a cot, access to running water through an outside hydrant, a portable air conditioning unit, and electricity, but lacks plumbing, a sink, a bathroom, or a kitchen. When the Debtor prepares food, he does so outdoors on a barbecue grill.

On October 15, 2019, JH obtained a judgment against the Debtor, and subsequently abstracted the judgment in Limestone County, thereby encumbering any non-exempt Limestone County real property. On his Schedule C, the Debtor claims a homestead exemption on his interest in the Limestone Tracts under Article XVI, Sections 50 and 51 of the Texas Constitution and Tex. Prop. Code §§ 41.001-002.

The Debtor does not spend most of his time at the Limestone Tracts. The Debtor spends most of his time living with his girlfriend at a house at 201 S. Bonham St., Mexia, Texas ("**Bonham Property**"). He lists the Bonham Property as his address on his Petition and Schedules and receives his mail there. The Debtor leases the Bonham Property but does not have an ownership interest in it. On Schedule A/B, the Debtor also lists an interest in a house located at 608 S. McKinney, Mexia, Texas ("**McKinney Property**"). The Debtor testified that he does not live at the McKinney Property and purchased it as a fixer-upper, which he eventually intends to sell.

JH and the Trustee timely objected to Debtor's homestead exemption claim (ECF Nos. 19 and 21), arguing that the Limestone Tracts do not qualify for a homestead exemption under Texas law. After hearing four witnesses and admitting evidence, the Court took this matter under advisement.

IV. **DISCUSSION**

In Texas, a landowner seeking homestead protection has the initial burden of establishing "(i) overt acts of homestead usage and (ii) the intention to claim the property as a homestead." ***Zorrilla v. Apyco Constr. II, LLC***, 469 S.W.3d 143, 159 (Tex. 2015). A landowner may also establish a homestead over unoccupied land by showing "(1) *present intent* to occupy and use the land as a home and (2) an overt act in furtherance of this intent." ***AG Acceptance Corp. v. Veigel***, 564 F.3d 695, 698 (5th Cir. 2009) (emphasis in original) (quoting ***Farrington v. First Nat. Bank of Bellville***, 753 S.W.2d 248, 250 (Tex. App.—Houston [1st Dist.] 1988, writ denied)). A landowner may claim only one homestead at a time. Tex. Const. art. XVI, §§ 50-51.

The Debtor asserts that the sum of his activities on the Limestone Tracts shows both a present intent to occupy the land as a homestead in the future and evidence of overt acts in furtherance of this present intent. The Debtor concedes that he resides at the Bonham Property: he has mainly lived there for the past three years, receives his mail there, and parks his vehicles there. Because he does not currently occupy the Limestone Tracts, the Court must decide whether the Debtor has carried his burden to show (1) a present intent to occupy the Limestone Tracts as a home in the future and (2) overt acts furthering that intent. *Id*. JH and the Trustee argue that the Debtor's daily visits to the Limestone Tracts to care for his horses and occasional overnight visits with neighboring landowners are insufficient to meet that burden.

a. **PRESENT INTENT**

A landowner must show a clear intent to use the property as a homestead at a "reasonable and definite time in the future" if he does not currently occupy the land. *Id.* at 699. This means

4

that conditional intent to use the property as a homestead is insufficient. ***Matter of Claflin***, 761 F.2d 1088, 1091 (5th Cir. 1985). This presents a problem for the Debtor, who testified that he will not build a house on the Limestone Tracts until he divides his one-half interest in the land with his brother.

The Debtor has failed to divide his interest in the Limestone Tracts in the twenty years he has had it and presented no evidence that he has made plans, or will be able, to do so at a definite time in the future. The Debtor attributed his failure to partition his undivided interest to an ongoing dispute with his brother over the proper division of the land, but presented no evidence of when or how he might resolve this dispute, partition the Limestone Tracts, build a house on the land, and then move there permanently from his current residence at the Bonham Property. Although the Debtor retained an attorney to partition the land years ago, nothing came of the retention. The Debtor himself, apparently recognizing the uncertainty of his situation, requested in his plan permission to extend his lease at the Bonham Property for another year. The Court is thus not convinced that the Debtor has carried his burden as to his present intent to use the Limestone Tracts as his homestead at a "reasonable and definite time in the future."

### b. OVERT ACTS

"Generally, a 'homestead' is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith." ***Farrington***, 753 S.W.2d at 250 (citing ***Gann v. Montgomery***, 210 S.W.2d 255 (Tex. App.—Fort Worth 1948, writ ref'd n.r.e.)). Overt acts must show preparations toward actual occupancy and use that "manifest beyond doubt the intention to complete the improvements and reside upon the place as a home." ***Veigel***, 564 F.3d 695 at 699 (citing ***Farrington***, 753 S.W.2d at 250). In other words, the

improvements made to the proposed homestead must involve building a house or infrastructure for a house to support a homestead exemption claim.

The Debtor has made the following improvements to the Limestone Tracts: (1) installing a gate (within the last two years); (2) installing and repairing the circumference fence surrounding part of the land (ongoing maintenance for about the last fifteen years); (3) installing a new horse shed (about a year ago); (4) clearing out the brush (about a year ago); and (5) putting in a layer of topsoil (between one and two years ago).

The Debtor's improvements do not convincingly corroborate an intent to permanently occupy the Limestone Tracts as a homestead. The improvements merely suggest maintenance of the land for horses and storage, rather than preparation for construction of a permanent dwelling. While the Debtor has ramped up the amount and variety of work at the Limestone Tracts in the past two years, that work appears to have been for non-homestead purposes. Removing the brush and overgrowth, for instance, was done to clear the view from a road on the property and allow access to a previously obstructed exit from the land. The gate the Debtor installed along the fence line was put in partly to benefit Marvin Pettis, owner of a plot adjoining one of the Limestone Tracts, and partly to allow access to the horses on the property. These improvements are ambiguous at best, and the extent of the improvements relative to the time the Debtor has owned the Limestone Tracts suggests the non-homestead nature of the improvements. Much of the time the Debtor has owned the Limestone Tracts has been spent working on the fence (about fifteen years).

The lack of concrete preparatory steps toward the construction of a permanent dwelling is crucial to this element. "'House' is necessarily embraced in the word 'homestead.'" **Gann**, 210

S.W.2d at 259. A "house" for purposes of a homestead must be a permanent fixture upon the land, not a moveable chattel. *Id.* at 260 (denying a homestead exemption over a house trailer). The Debtor's assertion that he will build a house on the land is conditional and not sufficiently supported by overt acts: for twenty years the Debtor has been in the process of resolving the preliminary issue of partitioning the land, which has not occurred, and he has not yet arrived at the relevant preparatory stage of building a house or infrastructure for a house. He has not spoken with a builder or drawn a house plan and it remains uncertain when, if ever, he will get there.[3]

The Debtor also argued that the following activities that take place on the land are overt acts of homestead usage: (1) staying overnight in the portable building on the weekends, mostly during the summer months; (2) inviting friends to the land for cookouts sometimes; and (3) traveling to the land on a near-daily basis to take care of the horses. The Debtor implies the existing structures on the Limestone Tracts, in conjunction with these activities, show his homestead intent. The Court disagrees. No structure on the Limestone Tracts is currently suitable for use as a home, and none of the activities undertaken on the Limestone Tracts imparts the tracts with the qualities of a homestead.

Video evidence of the first structure, the old house, was presented at the hearing and showed it to be uninhabitable and in heavy disrepair. Trash littered each room shown in the video. Most windows were broken or left open, the front door lacked any hardware, and the building did not appear to have power. The Debtor testified that nobody, including the Debtor himself, had

---

[3] Even meeting with a contractor and obtaining blueprints for a house may not be enough to convert property into a homestead. ***Barnes v. Jones***, 118 S.W.2d 647 (Tex. App.—Austin 1938, no writ) (finding no homestead where landowners worked with contractor to produce a blueprint for a house but put off construction indefinitely due to cost concerns). The Debtor has not even taken this preliminary step.

7

lived in the house for a long time. Debtor presented no evidence that he intended to restore the old house to a condition suitable for long-term habitation, nor any evidence that he intended to live in the house in the future. Thus, the old house cannot support the Debtor's homestead exemption.

The portable building cannot save the Debtor's exemption, either. The portable building is much closer to a temporary room than to a permanent residence—it lacks interior plumbing, which is an essential feature of a permanent house. The Debtor testified that he had the portable building moved, fully intact, onto the Limestone Tracts about five years ago. That he has since connected electricity and outside water (but no interior plumbing) to the portable building does not sufficiently change the character of the Limestone Tracts. The evidence suggests water and electrical service to the Limestone Tracts pre-dates the Debtor's inheritance of the tracts. The Debtor testified that he lived in the old house when he was a child, implying that the Limestone Tracts had access to power and water well before the Debtor acquired the property. Even if this were not the case, the Debtor's horses required access to water, diminishing any argument that the provision of water to the property was an overt act in support of a homestead claim. Most importantly, the Debtor's stated intent is not to convert the portable building into a permanent fixture, but to build an actual house upon the land at some point. As it stands, the portable building cannot support a homestead exemption.

Neither hosting an occasional cookout for friends nor sleeping in the portable building at times qualifies as an overt act of homestead usage. Infrequent occupation of land does not convert it into a homestead. ***Hillard v. Home Builders Supply Co.***, 399 S.W.2d 198, 201 (Tex. App.—Fort Worth 1966, writ ref'd n.r.e.) ("The mere fact that they may have actually resided in the house over weekends or at other times of longer duration standing alone does not convert it to homestead.");

*see also* **Matter of Morgan**, 848 Fed. Appx. 629 (5th Cir. 2021). While he visits the Limestone Tracts on a near-daily basis to tend to his horses, the Debtor has not spent the night there since late November 2022. The purpose of these visits is better explained as maintenance of the Debtor's horses rather than preparation for permanent occupancy.

Finally, the Court notes in passing that the Limestone Tracts consist of two noncontiguous plots of land. The evidence presented by the parties did not paint a particularly complete picture of the layout of the Limestone Tracts, leaving open the possibility that the portable building and at least some improvements are on separate, noncontiguous tracts. If this is the case, the Debtor has another hurdle to clear before he can claim a homestead exemption over both tracts. Assuming, hypothetically, that the Debtor's use of the tract on which the portable building sits establishes homestead usage, the Debtor must also show that improvements and activities on the noncontiguous tract link that tract to the homestead. **In re Schott**, 449 B.R. 697, 705 (Bankr. W.D. Tex. 2011). In other words, even if the Debtor had carried his burden on the "home" tract (which he did not), the non-home tract of land may not have qualified for homestead protection. The Court needs not address this issue, however, because it finds that the Debtor has failed to carry its burden on either tract.

As it stands, the Debtor's occasional and inconsistent occupancy of his portable building is not an overt act of homestead usage, and his lack of initiative in building a suitable residence on the land does not "manifest beyond doubt" an intent to make the Limestone Tracts his future homestead. The Court finds that the Debtor has failed to carry his burden to establish that the Limestone Tracts are his homestead, and his exemption should thus be denied.

**V. CONCLUSION**

The Court will sustain the objections to Debtor's homestead exemption claim. It is, therefore,

**ORDERED** that *Secured Creditor's Objection to Debtor's Claim of Homestead Exemption in Real Property* (ECF No. 19) and *Trustee's Objection to Debtor's Claimed Exemptions* (ECF No. 21) are **SUSTAINED** and Debtor's claim of entitlement to a homestead exemption in Limestone Tracts is **DENIED**.

# # #